UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

JAIME COOPER                                CIVIL ACTION

VERSUS                                      NO: 06-892

FAITH SHIPPING, ET AL.                      SECTION: R

**ORDER AND REASONS**

Before the Court is plaintiff's motion for a default judgment. R. Doc. 117. For the following reasons, the Court GRANTS the motion.

I.  **BACKGROUND**

This longshoreman's personal injury action arises out of a tragic accident on board the M/V CLIPPER FAITH on February 15, 2006. In December of 2005, the CLIPPER FAITH traveled to Cabedelo, Brazil to pick up packets of baler twine manufactured by defendant Companhia Industrial do Sisal (CISAL). At some point before the twine was loaded onto the vessel, the packets were arranged into cube-shaped piles on top of wooden pallets and then covered with a plastic wrapping. Each pallet contained approximately fifty packets of baler twine and weighed

approximately 1,950 pounds.  A Brazilian stevedoring company, not a party to this action, loaded the pallets of twine onto the CLIPPER FAITH in Cabedelo.

Once the cargo was loaded, the CLIPPER FAITH traveled to New Orleans, Louisiana.  During the voyage, the vessel encountered rough weather and rolled deeply to its port side.  When the vessel arrived in New Orleans, stevedoring company Pacorini USA began unloading the pallets of baler twine.  All parties agree that it was apparent at that time that the cargo had shifted during the voyage and that it was a "bad stow."

On the day of the accident, Pacorini's foreman was using a forklift to remove pallets of baler twine.  Plaintiff Jaime Cooper, who was employed by Pacorini as a longshoreman but did not have any previous experience working on a vessel, was in charge of picking up broken pieces of wood that could obstruct the forklift's path.  While the foreman was operating the forklift on the starboard side of the hold, about five pallets of baler twine on the port side fell and landed on Cooper.  Cooper was partially buried under the heavy pallets and suffered a severe spinal cord injury that rendered him a paraplegic.

Cooper filed a complaint in this Court on February 22, 2006, asserting negligence claims against several entities connected to the vessel ("vessel interests") and against the twine manufacturer, CISAL.  The vessel interests moved for summary

judgment on February 2, 2008, arguing that Cooper had not established a genuine issue of material fact with respect to any of the three duties outlined in *Scindia Steam Navigation Co. v. De Los Santos*, 451 U.S. 156 (1981). R. Doc. 32. The Court granted a partial summary judgment with respect to two of the three *Scindia* duties on July 28, 2008. R. Doc. 81. Cooper recently advised the Court that he and the vessel interests had reached an agreement to settle the remaining claim. R. Doc. 110.

The only defendant not covered by the settlement agreement is CISAL, the manufacturer of the cargo that fell on Cooper. Cooper alleged in his complaint that CISAL was negligent in the following ways:

(a) Failure to exercise reasonable care in loading and stowing the cargo aboard the M/V CLIPPER FAITH;

(b) Failure to exercise reasonable care in making up and binding the cargo of the M/V CLIPPER FAITH;

(c) Failure to inspect the cargo of the M/V CLIPPER FAITH;

(d) Failure to adequately train and supervise its employees to make up, bind and load cargo aboard the M/V CLIPPER FAITH;

(e) Other negligent acts and/or omissions to be shown at the trial of this matter.

R. Doc. 1 at ¶ 7. CISAL was served with process on November 9, 2007, through its legal representative in Bayeux, Brazil. *See* R. Doc. 114-4. The representative indicated on the return that CISAL's acceptance of service did not indicate its acquiescence to this Court's jurisdiction. *Id.* at 3, 5. CISAL then failed to

answer the complaint or otherwise make an appearance. Upon Cooper's motion, the Clerk of Court entered CISAL's default on January 14, 2009.

Cooper has now moved the Court to enter judgment on CISAL's default pursuant to Federal Rule of Civil Procedure 55(b)(2). In the motion, Cooper presses only the second of his four theories of liability. He argues that CISAL failed to exercise reasonable care in "providing and ma[king] up" the wooden pallets on which the packets of baler twine were stacked. R. Doc. 117-2 at 1. Specifically, Cooper claims that the pallets were "substandard and poorly constructed" and that the plastic wrapping around the stacks of baler twine was "loose instead of tightly shrink wrapped." *Id.* at 2-3. According to Cooper, "[t]hese deficiencies created an unsafe condition and caused the pallets to topple over onto [him] on February 15, 2006." *Id.* at 3.

Cooper alleges that CISAL is liable for $9,784,441.28 in damages. R. Doc. 117-2 at 7. The Court held a hearing on May 28, 2009 to permit Cooper to introduce evidence of his damages. The Court now rules on the motion as follows.

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 55(b), a default judgment may be entered against a party when it fails to plead or otherwise respond to the plaintiff's complaint within the

required time period. FED. R. CIV. P. 55(b). A plaintiff who seeks a default judgment against an uncooperative defendant must proceed through two separate steps. First, the plaintiff must petition the court for the entry of default, which is simply "a notation of the party's default on the clerk's record of the case." *Dow Chem. Pac. v. Rascator Mar. S.A.*, 782 F.2d 329, 335 (2d Cir. 1986); *see also United States v. Hansen*, 795 F.2d 35, 37 (7th Cir. 1986) (describing the entry of default as "an intermediate, ministerial, nonjudicial, virtually meaningless docket entry"). Before the clerk may enter the defendant's default, the plaintiff must show "by affidavit or otherwise" that the defendant "has failed to plead or otherwise defend." FED. R. CIV. P. 55(a). Beyond that requirement, however, the entry of default is largely mechanical.

Once default has been entered, the plaintiff's well-pleaded factual allegations are deemed admitted. *See Nishimatsu Const. Co., Ltd. v. Houston Nat. Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975). At the same time, the defaulting defendant "is not held to admit facts that are not well-pleaded or to admit conclusions of law." *Id.* (citing *Thomson v. Wooster*, 114 U.S. 104 (1885)). After the defendant's default has been entered, the plaintiff may request the entry of judgment on the default. If the plaintiff's claim is for a sum certain and the defendant has not made an appearance in court, the request for a default judgment may be

directed to the clerk. *See* FED. R. CIV. P. 55(b)(1). In all other cases, "the party must apply to the court for a default judgment." FED. R. CIV. P. 55(b)(2). No party is entitled to a default judgment as a matter of right. *See Lewis v. Lynn*, 236 F.3d 766, 767 (5th Cir. 2001) (per curiam). The disposition of a motion for the entry of default judgment ultimately rests within the sound discretion of the district court. *See Mason v. Lister*, 562 F.2d 343, 345 (5th Cir. 1977); *Silva v. City of Madison*, 69 F.3d 1368, 1377 (7th Cir. 1995); *Enron Oil Corp. v. Masonori Diakuhara*, 10 F.3d 90, 95 (2d Cir. 1993).

**III. DISCUSSION**

    **A.    Personal Jurisdiction and Service of Process**

Before entering judgment, the district court must "look into its jurisdiction both over the subject matter and the parties." *System Pipe & Supply, Inc. v. M/V Viktor Kurnatovskiy*, 242 F.3d 322, 324 (5th Cir. 2001) (quoting *Williams v. Life Savings and Loan*, 802 F.2d 1200, 1203 (10th Cir. 1986)). Judgment entered in the absence of jurisdiction is void, and the court must therefore refrain from entering judgment if its jurisdiction is uncertain.

In this case, subject matter jurisdiction is founded upon diversity of citizenship, 28 U.S.C. § 1332, and the admiralty and maritime grant, 28 U.S.C. § 1333. *See* Compl., R. Doc. 1 at ¶¶ 4, 10. The Court's exercise of personal jurisdiction over CISAL is

proper because: (1) CISAL purposefully directed the shipment of bailer twine to Louisiana, (2) Cooper's claim arises out of that contact with Louisiana, and (3) the exercise of jurisdiction is not unfair or unreasonable. *See Nuovo Pignone, SpA v. STORMAN ASIA M/V*, 310 F.3d 374, 379 (5th Cir. 2002) ("Even where a defendant has no physical presence in the forum state, a single purposeful contact is sufficient to confer personal jurisdiction if the cause of action arises from the contact.") (citing *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 222 (1957)). Finally, service of process appears to have been properly executed under the Federal Rules of Civil Procedure and the Inter-American Convention on Letters Rogatory. *See* Service File, R. Doc. 117-4 (manual attachment); *see also Kreimerman v. Casa Veerkamp*, 22 F.3d 634, 643 (5th Cir. 1994) (holding that the Inter-American Convention on Letters Rogatory "provides plaintiffs with a 'safe harbor'--a dependable mechanism--but not necessarily the only lawful mechanism--by which they may effect service on defendants residing in another signatory nation").

For the foregoing reasons, the Court finds that it has jurisdiction "both over the subject matter and the parties." *System Pipe & Supply, Inc.*, 242 F.3d at 324.

### B. Entry of Judgment

The Court must now decide whether a default judgment should

be entered against CISAL. The record shows that CISAL was served with process on November 9, 2007 but has failed to plead or otherwise defend against Cooper's claims. Indeed, CISAL has made no appearance at all despite having been mailed copies of the Clerk of Court's January 14, 2009 order granting Cooper's motion for the entry of default, R. Doc. 116; the Court's May 5, 2009 order setting this matter for oral argument, R. Doc. 122; and the minute entry for the oral argument, R. Doc. 123. Although judgments by default are generally disfavored, *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998), the Court finds that CISAL's failure to appear has made it impossible to achieve the "just, speedy, and inexpensive disposition" of this case on the merits. *Sun Bank v. Pelican Homestead & Sav. Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989). The record does not reveal any excuse for CISAL's failure to appear; indeed, CISAL's notation that its acceptance of service did not indicate its acquiescence to this Court's jurisdiction suggests a willful failure to appear. *See* R. Doc. 114-4 at 3, 5. For these reasons, the Court will enter a default judgment against CISAL.

### C. Damages

Cooper has alleged damages in the amount of $9,784,441.28. It is the Court's duty "to fix the amount which the plaintiff is lawfully entitled to recover and to give judgment accordingly."

*Pope v. United States*, 323 U.S. 1, 12 (1944); *see also Credit Lyonnais Securities (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999) ("Even when a default judgment is warranted based on a party's failure to defend, the allegations in the complaint with respect to the amount of the damages are not deemed true. The district court must instead conduct an inquiry in order to ascertain the amount of damages with reasonable certainty.") (internal citations omitted). The Court held an evidentiary hearing on May 28, 2009 for this purpose and has determined that Cooper is entitled to recover the following money damages.

### 1. Past and Future Medical Expenses

Cooper has asked for $454,828.28 in past medical expenses and $2,962,200.00 in future medical expenses. He has submitted extensive documentary evidence in support of claim for past medical expenses and has submitted the affidavits of medical experts and an economic expert in support of his claim for future medical expenses. The Court has reviewed the evidence and finds that Cooper has shown, by a preponderance of the evidence, that he incurred the listed damages. The Court therefore finds that Cooper is entitled to $454,828.28 in past medical expenses and $2,962,200.00 in future medical expenses.

### 2. *Past and Future Lost Earnings*

Cooper has asked for $57,552.00 in past lost earnings and $309,861.00 in future lost earnings. Cooper's economic expert states that Cooper's bi-weekly wage was $805.23 at the time of the accident, Rice Aff., R. Doc. 117-18 at 1, a number that Cooper confirmed in his testimony at the evidentiary hearing. Cooper has not been able to work since the accident, and his vocational rehabilitation expert has stated in an affidavit that "Mr. Cooper is more probably than not incapable of successfully competing for or for maintaining any type of employment." Meunier Aff., R. Doc. 117-16 at 3. The Court finds that Cooper has established these facts by a preponderance of the evidence. Cooper's economic expert has calculated Cooper's past after-tax lost earnings to be $57,552.00. Rice Aff., R. Doc. 117-18 at 1. The expert has also calculated the after-tax value of Cooper's future lost earnings using the method described in *Culver v. Slater Boat Co.*, 722 F.2d 114 (5th Cir. 1983) (en banc). Based on the assumption that Cooper will not be able to work again, and based on a discount rate of 2.0% and a statistical life expectancy of 38.54 years, the expert stated that the present value of those earnings is $309,861.00. The Court finds that Cooper has established these facts by a preponderance of the evidence and that he is therefore entitled to $57,552.00 in past lost earnings and $309,861.00 in future lost earnings.

### 3. *Past and Future Pain and Suffering, Mental Anguish, and Loss of Enjoyment of Life*

Cooper has asked for $6,000,000 for past and future pain and suffering, mental anguish, and loss of enjoyment of life. He presented evidence of the following facts at the evidentiary hearing held on May 28, 2009:

(1) Several pallets of baler twine, weighing approximately 2,000 pounds each, fell on top of him while he was helping unload the M/V CLIPPER FAITH.

(2) When he was buried under the pallets, his life flashed before his eyes. He was conscious the entire time and was in "excruciating pain." He could not breathe.

(3) He was first transported to Touro Hospital. During the trip there, his bones felt as if they were rubbing against one another. Every bump in the road caused him great pain.

(4) The medical staff at Touro Hospital stabilized him, but no doctor was available to operate. Cooper was then transported to West Jefferson Medical Center.

(5) Cooper was at West Jefferson Medical Center for a day before the medical staff was able to operate on him. The doctors inserted two rods and four screws into his back. He said that he could feel the rods and screws pressing against the inside of his back for one year after the operation.

(6) When Cooper found out after the surgery that he would never walk again, he was "deeply hurt." He was both worried about his ability to care for his mother and anguished that he would not be able to live the active life to which he was accustomed.

(7) Cooper spent two months in rehabilitation at West Jefferson Medical Center.

(8) Cooper (who has a slight build) lost thirty pounds after the accident.

(9) Cooper returned to West Jefferson Medical Center to

have the rods removed from his back one year after the
accident.

(10) Cooper now has difficulty traveling in New Orleans.
The uneven nature of the roads and sidewalks prevents
him from moving around easily in his wheelchair.

(11) It takes Cooper two to three hours to get out of bed
each morning. He is constantly in pain. He testified
that "every day is very hard now."

(12) He said that he is reminded daily that he is in a
wheelchair and that he "tears up" when he thinks about
it.

(13) Cooper testified in great detail about his loss of
enjoyment of life. He was previously a bantamweight
boxer of national acclaim and a leader of a Mardi Gras
Indian tribe but is no longer able to participate in
those activities. He recounted an incident in which he
fell from his wheelchair while trying to create a Mardi
Gras Indian costume and explained that he can no longer
perform even that relatively stationary task.

(14) Cooper also testified that he is no longer able to have
sexual relations and that it is unlikely that he will
ever be married or have children.

The Court observed Cooper's demeanor at the hearing and found him to be a credible witness. He spoke forthrightly and was not prone to exaggeration. The Court also notes that the wheelchair appeared to be causing Cooper physical discomfort during the hearing.

In addition to giving his own testimony, Cooper has submitted the affidavits of a number of medical experts. One of Cooper's treating physicians testified that Cooper has "100% permanent partial disability in his lower extremities." Colvin Aff., R. Doc. 117-13 at 2. Other experts testified to the

injuries that Cooper suffered during the accident, the difficulty he has had adjusting to his bowel regime, his experiences with infected decubitis ulcers, and the psychological effects of the accident and paralysis.  Before his injury, Cooper led an active life, pouring himself into his boxing as well as jobs of nearly every description.  He prided himself on being a contributing member of his community, on helping his family and his neighbors, and on being involved in the cultural life of New Orleans.  He looked forward to having his own wife and children.  His injury is a devastating mental and physical blow that will be with him forever.

The Court has taken all of this evidence into account and finds that Cooper is entitled to $6,000,000.00 for past and future pain and suffering, mental anguish, and loss of enjoyment of life.  This award is in line with cases involving similar injuries decided in Louisiana and the Fifth Circuit.  *See, e.g.*, *Foradori v. Harris*, 523 F.3d 477 (5th Cir. 2008) (finding that $10 million general damages award to quadriplegic plaintiff was not excessive under Mississippi law); *Hodgen v. Forest Oil Corp.*, 862 F. Supp. 1552 (W.D. La. 1994) (awarding $1.5 million in general damages to plaintiff with non-severe paraplegia who retained useful some motor function in the affected areas); *Simon v. American Crescent Elevator Co.*, 767 So.2d 64 (La. Ct. App. 2000) (upholding $6.4 million general damages award to plaintiff

rendered paraplegic by drilling accident); *see also Thornton v. Diamond Offshore Management Co.*, No. 08-30807, 2009 WL 1649487 (5th Cir. June 12, 2009) (upholding $2.5 million general damages award to plaintiff who lost the use of one arm).

### D. Set-Off

One final issue must be addressed before the total amount of CISAL's liability can be determined. Cooper alleged in his complaint that four defendants, including CISAL, negligently caused his injuries.[1] *See* Compl., R. Doc. 1 at ¶ 7. Under well-settled principles of maritime law, all four defendants are jointly and severally liable for the full amount of damages caused by their negligence. *See Coats v. Penrod Drilling Corp.*, 61 F.3d 1113, 1124-25 (5th Cir. 1995) (citing *The Atlas*, 93 U.S. 302, 315 (1876)). Cooper has now informed the Court that he has reached an agreement to settle his claims against all of the defendants except CISAL. *See* R. Doc. 110. This brings a second well-established doctrine into play: "when a plaintiff settles with one of several joint tortfeasors, the nonsettling defendants are entitled to a credit for that settlement." *McDermott, Inc. v. AmClyde*, 511 U.S. 202, 208 (1994); *see also Sciambra v. Graham News Co.*, 841 F.2d 651, 657-58 (5th Cir. 1988) (applying

---

[1] Cooper also named the vessel interests' insurance company as a defendant. *See* Compl., R. Doc. 1 at ¶ 8.

settlement credit in the context of a default judgment).  Thus, CISAL is entitled to a credit for the other defendants' settlement.

In ordinary cases, courts reduce the nonsettling tortfeasors' liability by an amount equal to the settling tortfeasors' proportionate fault.  *See McDermott*, 511 U.S. at 209, 217.  In other words, the trier of fact apportions liability among *all* of the defendants--both settling and non-settling defendants--and then reduces the non-settling defendants' liability to a level commensurate with their proportionate degree of fault.  Here, however, it is impossible to apply the ordinary approach.  There will be no trial as to liability in this case because all of the defendants have either settled or failed to appear.  Consequently, there will be no apportionment of fault from which to determine CISAL's proportionate share of the damages.

For these reasons, the Court finds that CISAL's liability must be reduced by the amount Cooper has received from the settling defendants rather than according to its proportionate share.  Although this "pro tanto" approach was rejected by the Supreme Court for ordinary cases, *see McDermott*, 511 U.S. at 217, courts have continued use it in situations in which the proportionate share approach cannot be used, such as when a party's default obviates the need for a trial as to liability.

*See, e.g.*, *Chisholm v. UHP Projects, Inc.*, 205 F.3d 731 (4th Cir. 2000) (applying the pro tanto approach when defendants were jointly liable for breach of no-fault duties); *Evanow v. M/V Neptune*, 163 F.3d 1108 (9th Cir. 1998) (applying the pro tanto approach in action for breach of contract); *Lukaszuk v. Sudeen*, No. 02-5143, 2007 WL 4699018, at *8 (E.D.N.Y. Nov. 27, 2007) ("Application of the [pro tanto approach] is particularly appropriate here since Freeman has wilfully defaulted and impeded determination of liability and comparative culpability."); *Stephenson v. Deutsche Bank AG*, No. 02-4845, 2007 WL 763087, at *14 (D. Minn. Mar. 9, 2007) (declining to follow the proportionate share approach in the context of a default judgment); *Hudson Venture Partners, L.P. v. Patriot Aviation Group, Inc.*, No. 98-4132, 2001 WL 871878, at *3 n.7 (S.D.N.Y. Mar. 15, 2001) (finding that set-offs in the context of a default judgment "should be pro tanto rather than proportionate to fault"); *Qualis Care, L.P. v. Hall*, No. 95-4955, 1999 WL 683564, at *8 & n.6 (S.D.N.Y. Sep. 1, 1999) (applying the pro tanto approach because the "grant of the plaintiff's unopposed summary judgment motion has eliminated the need for a trial, and thus no determination of the defendants' relative culpability will be made"); *In re: Crazy Eddie Securities Litigation*, 948 F. Supp. 1154, 1169 (E.D.N.Y. 1996) (applying the pro tanto approach because "it does not make sense to apply [the proportionate share

approach] in cases where the non-settling defendant wilfully defaulted by disregarding discovery obligations and impeded determination of liability"); *cf. Westinghouse Credit Corp. v. M/V New Orleans*, 39 F.3d 553, 555 (5th Cir. 1994) (holding that the non-settling defendants "are not entitled to call for the proportionate share rule in this case unless (1) they are joint tortfeasors with the settling defendants, and (2) the court determined damages based on the conduct of both [the non-settling tortfeasor] and the settling defendants").

Following these cases, the Court adopts the pro tanto approach here. In light of the atypical facts and posture of this case, the Court finds that the pro tanto approach best serves the "paramount" considerations identified by the Supreme Court in *McDermott*, particularly the promotion of judicial economy. *McDermott*, 511 U.S. at 212; *see also In re: Crazy Eddie Securities Litigation*, 948 F. Supp. at 1169 ("Clearly, none of the concerns of judicial economy, promotion of settlement or fairness discussed in *McDermott* would be served by engaging in proceedings to determine apportionment of fault now."). Although the application of the pro tanto approach might cause CISAL to bear liability that is disproportionate to its fault, *cf. id.* at 213-14, the alternative of conducting a non-adversarial hearing to apportion fault would be unlikely to lead to a more equitable apportionment because the participants would have every incentive

to minimize their own culpability and to exaggerate CISAL's fault.

CISAL is thus entitled to a credit equal to the amount of money that Cooper has received from the settling defendants. Before the Court can enter judgment, Cooper must inform the Court what that amount is. Once that information is submitted, the Court will enter a final judgment against CISAL as discussed in this order.

**IV. CONCLUSION**

For the foregoing reasons, plaintiff's motion for default judgment is GRANTED.

IT IS ORDERED that Cooper shall submit a letter to chambers within fourteen days of receipt of this order indicating how much money he has received from the settling defendants.

SO ORDERED.

New Orleans, Louisiana, this __22nd__ day of June, 2009.

_____Sarah Vance_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE